1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        CENTRAL DISTRICT OF CALIFORNIA
10
11   DOUGLAS ERIC ROSS,                  Case No.  CV14-05291-RGK (KES)
12                 Plaintiff,
13          v.                           FINAL REPORT AND
                                         RECOMMENDATION OF UNITED
14   DEPUTY BRIAN STEINWAND,             STATES MAGISTRATE JUDGE
     et al.,                             GRANTING DEFENDANTS' MOTION
15                                       FOR SUMMARY JUDGMENT
                 Defendants.
16
17
18          This Report and Recommendation ("R&R") is submitted to the Honorable R.
19   Gary Klausner, United States District Judge, pursuant to the provisions of 28
20   U.S.C.§ 636 and General Order 05-07 of the United States District Court for the
21   Central District of California.
22                                       I.
23                                  INTRODUCTION
24   A.     **Procedural History.**
25          The instant action arises out of events that transpired in 2010 when then pre-
26   trial detainee Douglas Eric Ross ("Plaintiff") was transported from Arizona to
27   California to testify at the gang-related murder trial of Rayshawn and Nickelis
28   Blackwell.  See Blackwell v. Montgomery, No. 13-931, 2014 WL 117345, at *1

(C.D. Cal. Jan. 9, 2014) (discussing the Blackwells' July 13, 2010 conviction, Plaintiff's pre-trial interview implicating Nickelis Blackwell, and Plaintiff's trial testimony recanting his earlier statements).  The three defendants in the operative First Amended Complaint ("FAC" at Dkt. 19) are (1) Brian Steinwand, then a Los Angeles County Sheriff's Department ("LACSD") detective on the Blackwell case; (2) Joseph Porras, then a prosecutor on the Blackwell case (now a Los Angeles County Superior Court ["LACSC"] judge); and (3) Ed Godfrey, then the Watch Commander at the Los Angeles County Men's Central Jail ("MCJ").

Plaintiff never filed a grievance concerning the facts alleged in his Complaint because he "was never provided with an opportunity to file a grievance, and [he] was in California's jurisdiction for only 14 days and following the last event, [he] was immediately expedited" back to Arizona.[1]  (Dkt. 1 at 2.[2])  On September 10, 2010 (signature date), Plaintiff presented a claim for damages under California's Government Claims Act against Defendants Godfrey and Steinwand, but he never presented such a claim against Defendant Porras.  (Dkt. 261-11 at 2.)

Nearly four years later, Plaintiff constructively filed his Complaint on June 19, 2014, based on his signature date and the prison mailbox rule.[3]  (Dkt. 1 at 12;

---

[1] The Prison Litigation Reform Act ("PLRA") requires that state prisoners exhaust their available prison administrative remedies before proceeding to federal court.  42 U.S.C. § 1997e(a).  Defendants have not moved for summary judgment on this ground, but Plaintiff's lack of exhaustion is relevant to Defendants' statute of limitations arguments, because Plaintiff is not entitled to any tolling for PLRA exhaustion.  Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005).

[2] All page citations are to the CM/ECF pagination.

[3] Under the "mailbox rule," a document is deemed filed with the Court on the date a prisoner delivers it to prison authorities for filing by mail.  See Patterson v. Stewart, 251 F.3d 1243, 1245 n.2 (9th Cir. 2001).  The mailbox rule applies to a pro se prisoner's § 1983 complaint. Douglas v. Noelle, 567 F.3d 1103, 1104 (9th Cir. 2009).

Dkt. 38 at n.2.)  Plaintiff sued each Defendant under 42 U.S.C. § 1983.  (FAC at 1.)

Plaintiff alleges that Defendants Steinwand and Godfrey subjected him to various

abuses at MCJ and during the trip back to Arizona in violation of his First

Amendment rights (i.e., to retaliate against him for his testimony at the Blackwell

trial and/or pressure him to testify more favorably for the prosecution) and his

Eighth/Fourteenth Amendment rights to be protected while in custody, free of

excessive force, and provided medical care.  (Id. at 6-9.)

Plaintiff alleges that Defendant Porras failed to ensure his safety while

Plaintiff was in California and, along with Defendant Steinwand, communicated

false information to authorities in Arizona about Plaintiff's behavior, causing

Plaintiff to (1) be housed in administrative segregation in Arizona for two weeks

and (2) suffer a harsher sentence in his then-pending Arizona criminal prosecution.

(Id. at 7, 11.)

The FAC does not contain any causes of action labelled with legal theories

other than 42 U.S.C. § 1983.  Liberally construing the FAC, Plaintiff also alleges a

state law claim for breach of oral contract against Defendant Porras.  Plaintiff

alleges that Defendant Porras promised to reimburse Plaintiff for an airplane ticket

that Plaintiff purchased to travel to California and testify at the Blackwells'

preliminary hearing in 2009 (when Plaintiff was not in custody), but never did so.

(Id. at 12.)

**B.      The Instant Motion.**

Defendants filed their motion for summary judgment on July 19, 2017 (Dkt.

261), accompanied by a Statement of Uncontroverted Facts ("SUF" at Dkt. 261-1)

and supporting evidence (Dkt. 261-2 through 261-35).

Defendants also filed a Request for Judicial Notice ("RJN") asking the Court

to take judicial notice of various court and government records under Federal Rule

of Evidence 201.  (Dkt. 261-6.)  The Court GRANTS Defendants' request and takes

judicial notice of the existence of each document and the fact that it was filed with a

3

court or mailed to Los Angeles County on the date indicated, because such dates are relevant to Defendants' statute of limitations defense discussed below. The Court does not judicially notice the truth of disputed facts stated in the documents.

On September 10, 2017, Plaintiff constructively filed his opposition (Dkt. 277), supporting brief (Dkt. 278), declaration in support of his opposition (Dkt. 279), "Opposition Statements of Disputed Factual Issues" (Dkt. 280), "Other Material Disputed Facts" (Dkt. 281), and "Declaration to Defendant's Statements of Uncontroverted Facts and Conclusions of Law" (Dkt. 282).[4]

Defendants did not file a reply to Plaintiff's opposition papers.

## II.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party, however, need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[4] On September 14, 2017, Defendants filed an "Objection to Any Late/Untimely Filed Opposition by Plaintiff to Defendants' Motion for Summary Judgment." (Dkt. 276.) Plaintiff signed his papers on the day before the September 11, 2017 deadline, making them timely and Defendants' objection moot.

4

requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. <u>Id.</u> at 250-51. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury … could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict …." <u>Id.</u> at 252.

The Court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." <u>MAI Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 516 (9th Cir. 1993). Rather, if there is a factual dispute, the Court must accept Plaintiff's version of what occurred and must draw all reasonable inferences in his favor. <u>Anderson</u>, 477 U.S. at 249, 255. A verified complaint may be used as evidence to oppose a motion for summary judgment if it is "based on personal knowledge and set forth specific facts admissible in evidence."[5] <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 (9th Cir. 1995).

---

[5] "A verified complaint may be used as an opposing affidavit" to oppose a summary judgment motion. <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 (9th Cir. 1995). However, a purportedly verified complaint is only admissible if the complaint was "based on personal knowledge and set forth specific facts admissible in evidence" and the plaintiff "stated under penalty of perjury that the contents were true and correct." <u>Id.</u> at 460 n.10. While many facts in the FAC concern events in which Plaintiff personally participated, such that he is competent to testify about them, Plaintiff did not sign the FAC under penalty of perjury. (<u>See</u> Dkt. 19.) Some of Plaintiff's other filings purport to be declarations, but he did not sign these under penalty of perjury either. (<u>See, e.g.</u>, Dkt. 199, 279, 282.) Defendants did not argue that any of Plaintiff's filed declarations are inadmissible for purposes of deciding Defendants' summary judgment motion. In recommending that Defendants' motion be granted, the Court assumed that Plaintiff's various filings were admissible evidence of his version of events.

**III.**

**SUMMARY OF EVIDENCE**

A.   <u>**Plaintiff's Involvement in the Blackwell Case.**</u>

In 2009, Defendant Porras learned that Plaintiff had given a recorded statement to the police indicating that he had witnessed events relevant to the Blackwells' murder prosecution.  (SUF 2.)  Defendant Porras traveled to Arizona to meet with Plaintiff and discuss his potential testimony at the Blackwells' preliminary hearing.  (<u>Id.</u>)

Plaintiff subsequently traveled to California and testified at the Blackwells' preliminary hearing in September 2009.  (SUF 3.)  At that time, Defendant Porras told Plaintiff that his testimony would be needed at trial.  (<u>Id.</u>)  As the June 2010 trial date approached, Defendant Porras learned that Plaintiff was incarcerated in Arizona at the Maricopa County Jail awaiting trial on unrelated criminal charges. (SUF 5.)

To make certain that Plaintiff appeared to testify at the Blackwells' trial, Defendant Porras had documents filed requesting that Plaintiff be transported to California under California Penal Code § 1334 <u>et</u> <u>seq</u>.  (<u>Id.</u>)  In response, the LACSC issued a Certification of Judge of Requesting State for Attendance of Witness Douglas Ross Pursuant to California Penal Code Section 1334.3 (the "Transport Order").  (<u>Id.</u>; Dkt. 261-4 at 7.)

Pursuant to the Transport Order, on June 25, 2010, California law enforcement personnel, including Defendant Steinwand, picked Plaintiff up in Arizona and transported him by car to the San Dimas Sheriff's substation, arriving that same day.  (SUF 6.)  On June 28, 2010, Plaintiff was transported from San Dimas to the Burbank courthouse for his first day of testimony at the Blackwells' trial.  (<u>Id.</u>)  Plaintiff testified on June 28, June 29, and July 7, 2010.  (SUF 9.)  After the first two days of testimony, he was transported to and housed at MCJ.  (SUF 7, 8.)  Plaintiff attaches to his declaration Defendant Steinwand's interrogatory

responses, wherein Steinwand states that Plaintiff was transferred to MCJ "as a result of Plaintiff's disruptive behavior at the San Dimas Sheriff's Station."[6]  (See Dkt. 277 at 15-16.)

Plaintiff's testimony concluded by noon on July 7, 2010, and on July 8, 2010, he was transported by car back to Arizona, again accompanied by Defendant Steinwand.[7]  (SUF 9, 10.)

**B.      Plaintiff's Treatment at MCJ and During the Trip Back to Arizona.**

Plaintiff declares that after his first day of testimony, Defendant Steinwand threatened to move him from San Dimas to MCJ, saying "once they find out you're there and who you are [i.e., a prosecution witness], they are going to kill [you]." (FAC at 6; Dkt. 199 at 6.)

When Plaintiff arrived at MCJ, he was "concerned for [his] life and safety" because both Blackwells were housed there during the trial.  (FAC at 6; Dkt. 199 at 8-9.)  He asked for help, including to use the phone, and Defendant Godfrey came to speak with him.  (Dkt. 199 at 9.)  Both men have differing accounts of what happened next.

Per Plaintiff, when Defendant Godfrey approached his cell, he told Plaintiff, "You ain't got sh** coming" because Plaintiff was helping the Blackwells "get away with murder."  (Id.)  Defendant Godfrey then instructed other officers who were there to remove Plaintiff from his cell, handcuff him, and take him to "an

---

[6] This contradicts Defendant Steinwand's claim in his motion for summary judgment that Plaintiff was transported to MCJ because it was closer to the Burbank courthouse than the San Dimas substation.  (See SUF 7.)

[7] There is conflicting evidence as to whether Plaintiff returned to Arizona on July 7 or July 8.  (Dkt. 1-3 at 2 [Plaintiff declares that he was transported back to Arizona "straight from court"].)  For purposes of this motion, the Court assumes Plaintiff was transported on June 8, 2010, giving Plaintiff the benefit of a later accrual date.

unknown area with no cameras ...."[8]  (FAC at 7-8; Dkt. 199 at 10.)  Defendant Godfrey accused Plaintiff of being "afraid to do the right thing" and invited Plaintiff to hit him.  (FAC at 8; Dkt. 199 at 11.)  When Plaintiff did not hit him, Defendant Godfrey "had the officers slam [Plaintiff] on the ground."  (Id.; Dkt. 199 at 10 [Plaintiff is "unsure if it was on the bunk or the floor."].)  Plaintiff alleges he was then sent to administrative segregation at MCJ "for no reason" and without receiving any medical care.  (Id. at 8-9; Dkt. 199 at 11-12.)

Per his discovery responses, Defendant Godfrey recalls responding to Plaintiff's request that he visit his cell at MCJ, but observed that Plaintiff "became enraged when [Godfrey] informed him that [Godfrey] could not meet his housing demands, based on jail rules and protocols.  [Plaintiff] became hostile and made threats along the lines that he wanted to kill [Godfrey], and for [Godfrey] to watch out when he was back on the streets."  (Dkt. 170 at 25-26.)  At that point, Plaintiff was charged with threatening an officer, handcuffed, and escorted to the disciplinary housing module.  (Dkt. 221 [LACSD incident report].)  This occurred on July 3, 2010.  (Id.)

When Plaintiff was moved out of administrative segregation at MCJ, he was subjected to a strip search during which he declares that he was "struck with a wand like instrument" that caused "bleeding" from his "rectal area."  (FAC at 8-9, 13; Dkt. 199 at 13.)

Plaintiff also declares that on one occasion, he was transported from MCJ to the Burbank courthouse on the same bus as the Blackwells, although he did not testify that day.  (FAC at 9-10; Dkt. 199 at 7-8.)  When he eventually took the witness stand again on July 7, 2010, he told defense counsel and the trial judge about his treatment at MCJ.  (FAC at 10; Dkt. 199 at 12-13.)

---

[8] Defendant Godfrey declares that at MCJ "at the relevant time no cameras had been installed and/or were operational."  (Dkt. 261-3 at 2.)

Plaintiff declares that on the ride back to Arizona, he received no food and remained handcuffed, such that he was in pain and could not use the restroom. (FAC at 6; Dkt. 199 at 14-15.) Defendant Steinwand declares, "based on the fact I had been informed [Plaintiff] had been somewhat uncooperative … during the court proceedings I made the decision to affix a small rear facing video camera in our transport vehicle and also an audio recorder in an effort to document the trip back to Arizona. [Plaintiff] was delivered back to the custody of Maricopa County Sheriff's Department without incident." (Dkt. 261-5 at 2.) The video recording has not been submitted to the Court as evidence.

## C.     Events After Plaintiff Returned to Arizona.

Plaintiff contends that Defendant Steinwand told someone at the Maricopa County Jail that Plaintiff had "assaulted an officer" in California such that, upon his return to Arizona, Plaintiff "was immediately placed in the hole" where he remained for "2 weeks fighting to get out." (FAC at 7, 11; Dkt. 199 at 15 [Plaintiff declares he heard Steinwand say that Plaintiff "had done something in California and that they would send them the paperwork"].[9]) He fought to get out of disciplinary housing by filing grievances.[10] (Dkt. 199 at 16.) Records submitted by

---

[9] Defendant Steinwand declares, "This is false. At no time have I ever spoken with any Maricopa County District Attorney or Maricopa County Sheriff's Deputy regarding [Plaintiff] …." (Dkt. 261-5 at 2.)

[10] See grievances dated July 12 and 14, 2010 (Dkt. 261-13 and 261-14 [claiming to be in fourth floor disciplinary housing for "threatening someone in California" and claiming "there is no documentation to support my housing status"]), and Maricopa County's response dated July 16 (Dkt. 261-15 [indicating Plaintiff would remain in security segregation pending an administrative review of his file]).

Plaintiff submitted an earlier grievance dated July 11, 2010, stating, "There is information that was provided with regards to contraband being provided to me that she [Sgt. Hays] refused to talk to me for full details. I would like …a polygraph to verify truth in the above matter which involved cigarettes, porn and unprofessional misconduct …." (Dkt. 199-4 at 96.) A response dated July 20, 2010 says, "Per Sgt.

Plaintiff show he was housed on the fourth floor on July 9, 2010, but moved to the third floor on July 20.  (Dkt. 199-4 at 102.)

Plaintiff was tried for burglary and other charges in his Arizona case and convicted on October 6, 2010.  (Dkt. 261-9 at 2 [history for Maricopa County case No. CR2010-121395].)  Plaintiff waived his right to counsel and represented himself at trial.  State v. Ross, No. 1 CA-CR 11-0539, 2013 WL 49725, at *1 (Ariz. Ct. App. Jan. 3, 2013).  On November 8, 2010, he was sentenced to 17 years in prison.  (Dkt. 261-19 at 3.)  He pursued a timely but unsuccessful appeal in which he was represented by counsel.  See Ross, 2013 WL 49725.

On September 10, 2010 (signature date), Plaintiff presented a claim for damages under California's Government Claims Act against Defendants Godfrey and Steinwand.  (SUF 32; Dkt. 261-11 at 2.)  The claim includes a 1-page form accompanied by a 14-page handwritten narrative.  (Id.)

On November 15, 2010, Los Angeles County mailed Plaintiff a letter advising that his claim had been denied by operation of law on November 1, 2010. (SUF 40; Dkt. 261-12.)  The letter further advised that Plaintiff would need to file any lawsuit based on the facts alleged in the rejected claim within six months.  (Id.)

Plaintiff did not pursue his claims against Defendants Steinwand or Godfrey until he constructively filed his Complaint in this action on June 19, 2014.  (Dkt. 1 at 12.)  At about the same time (i.e., on June 27, 2014), Plaintiff filed another civil rights complaint in the District of Arizona alleging that he had been assaulted by correctional officers there.  See Ross v. Winkle, No. 14-1480, 2016 WL 2909712, at *1 (D. Ariz. May 19, 2016).[11]

_____

Hays you are pending re-classification; until then any detailed information you have on misconduct or contraband can be reported to supervisors …."  (Id.)

[11] In that action, Plaintiff alleged that on March 3, 2014, a correctional officer "broke [his] hand, spit on [him] and left [him] to die."  (Dkt. 1 at 2, Case No. 14-1480 (D. Ariz.).)  He claimed to have exhausted administrative grievance

**IV.**

**OVERVIEW OF CLAIMS**

The Court has grouped Plaintiff's claims into the following three categories: (1) § 1983 claims based on events that occurred in California or during the ride back to Arizona, (2) § 1983 claims based on events that occurred in Arizona, and (3) state law claims subject to the claim presentation requirements of the California Government Claims Act.

**V.**

**STATUTE OF LIMITATIONS AND CLAIMS PRESENTATION ANALYSIS**

For the reasons discussed below, the claims in Group One are time-barred; the claims in Group Two are not time-barred, and the Court proceeds to discuss these claims on the merits in Section VI, <u>infra</u>; and the claims in Group Three are either time-barred or barred because Plaintiff failed to present them to the Los Angeles County Board of Supervisors.

**A.     GROUP ONE: Section 1983 Claims Based on Events that Occurred in California or During the Ride Back to Arizona.**

**1.     California's Statutory and Equitable Tolling Rules.**

Civil rights claims under 42 U.S.C. § 1983 are subject to the forum state's statute of limitations for personal injury claims. <u>Van Strum v. Lawn</u>, 940 F.2d 406, 410 (9th Cir. 1991). In California, the applicable limitations period is two years. Cal. Code Civ. Proc. § 335.1; <u>Canatella v. Van De Kamp</u>, 486 F.3d 1128, 1132 (9th Cir. 2007).

Federal law determines when a claim accrues and the applicable limitations period begins to run. <u>Bagley v. CMC Real Estate Corp.</u>, 923 F.2d 758, 760 (9th

---

procedures. (<u>Id.</u> at 4.) There are 132 docket entries leading to a judgment entered against Plaintiff on May 19, 2016. In 2015, Plaintiff filed in the District of Arizona Cases No. 15-686 (voluntarily dismissed) and No. 15-2477 (terminated for failure to pay filing fee or submit trust account statement).

Cir. 1991), cert. denied, 502 U.S. 1091 (1992).  A cause of action accrues under federal law as soon as a potential claimant either is aware or should be aware of the existence and cause of his injury.  Lee v. United States, 809 F.2d 1406, 1410 (9th Cir. 1987), cert. denied, 484 U.S. 1041 (1988).

Upon accrual, California's tolling provisions apply.  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004), cert. denied, 546 U.S. 820 (2005).  By statute, California provides up to two years of tolling for certain prisoners with certain claims, as follows:

> (a) If a person entitled to bring an action, mentioned in Chapter
> 3 (commencing with Section 335[12]), is, at the time the cause of action
> accrued, imprisoned on a criminal charge, or in execution under the
> sentence of a criminal court for a term less than for life,[13] the time of
> that disability is not a part of the time limited for the commencement
> of the action, not to exceed two years.
>
> (b) This section does not apply to an action against a public
> entity or public employee upon a cause of action for which a claim is
> required to be presented ….
>
> (c) This section does not apply to an action, other than an action
> to recover damages or that portion of an action that is for the recovery
> of damages, relating to the conditions of confinement, including an
> action brought by that person pursuant to Section 1983 of Title 42 of
> the United States Code.

Cal. Code Civ. Proc. § 352.1.  Subsection (a) applies only to persons imprisoned on

---

[12] This is California's list of the limitations periods applicable to various kinds of actions, including personal injury actions.

[13] California courts have read out of the statute the qualification that the period of imprisonment must be for a term less than life.  See Jones v. Blanas, 393 F.3d at 927 n. 5.

a criminal charge or under a criminal sentence. <u>Jones</u>, 393 F.3d at 927-28 (refusing to apply statutory tolling to civilly detained sexually violent predators) (citing <u>Hubbart v. Superior Court</u>, 19 Cal.4th 1138 (1999) (same)).

In addition to prisoner statutory tolling, California also recognizes equitable tolling. <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999) (applying California's equitable tolling doctrine to § 1983 claims). The equitable tolling doctrine is an adjunct to the statutory tolling created by the California Legislature and is based on a recognition that the Legislature cannot "predict all of the circumstances that come within the purpose of the tolling exceptions." <u>Lambert v. Commonwealth Land Title Ins. Co</u>., 53 Cal. 3d 1072, 1078 (1991). Equitable tolling operates independently of section 352.1 "to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." <u>Jones</u>, 393 F.3d at 928. "[T]he effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded." <u>Lantzy v. Centex Homes</u>, 31 Cal. 4th 363, 370 (2003).

Generally, a plaintiff must meet three conditions to equitably toll a statute of limitations under California law: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." <u>Fink</u>, 192 F.3d at 916; <u>see</u> <u>Addison v. State</u>, 21 Cal.3d 313, 317 (1978) (applying equitable tolling when a plaintiff "possessing several legal remedies … reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage"). Ultimately, the availability of equitable tolling does not depend on satisfying an inflexible list of elements. Rather, the determination "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the ... limitations statute." <u>Addison</u>, 21 Cal. 3d at 321.

For example, in <u>Jones v. Blanas</u>, the Ninth Circuit held that a civil detainee

was entitled to equitable tolling under the facts of that case, which included: (1) Jones was incarcerated at the Sacramento County Jail for over two years awaiting trial under the Sexually Violent Predator Act, (2) during the first year, he was housed with the general criminal population, (3) during the second year, he was housed in administrative segregation, severely limiting his access to legal materials, (4) when he was transferred from the county jail to a state hospital on December 13, 1999, he filed suit promptly thereafter on December 29, 2000, and (5) his filing date was only about one week after the expiration of the then one-year limitations period, weighing against any prejudice to the defendants. Jones, 393 F.3d at 924. The Ninth Circuit found that while at the county jail, Jones suffered from the same or worse obstacles to filing suit than those at the same facility in criminal custody. Id. at 929 ("Jones alleges conditions of confinement that would make the filing of a lawsuit practically impossible even for a trained attorney."). Once transferred from the county jail, Jones "acted in good faith to pursue his claims" promptly, i.e., he filed his lawsuit approximately sixteen days later. Id. Under these circumstances, the Ninth Circuit held that Jones was equitably entitled to the same two years of tolling that he would have received by statute had he been continuously confined as a California criminal detainee. Id. at 930.

In contrast, in Fink v. Shedler, 192 F.3d 911 (9th Cir. 1999), the Ninth Circuit affirmed the dismissal of time-barred § 1983 claims at the pleading stage, because the facts alleged or subject to judicial notice showed that Fink, an inmate entitled to two years of statutory tolling, was not entitled to additional equitable tolling. Fink had filed "at least one other prisoner § 1983 action pending in the district court[, referred to herein as Gomez,] while the statute of limitations for the instant claims was running." Id. at 913. Fink initially sought to bring the claims in the dismissed lawsuit by amendments in Gomez, but after several failed attempts, he filed the second action. Id. Rather than finding that these facts showed a good faith attempt to pursue his claims in an alternative forum, the Ninth Circuit rejected

Fink's equitable tolling argument, as follows:

> This claim is completely unrelated and does not arise from the same transaction or occurrence as the <u>Gomez</u> claims. In his proposed amendments to <u>Gomez</u>, Fink sought to add seventeen new defendants and four new causes of action …. He sought to do so in the midst of summary judgment proceedings in that case. Motions to amend were denied in <u>Gomez</u> at least twice before the statute of limitations ran on the instant Eighth Amendment claims ….
>
> […] If anything, Fink's efforts demonstrate his subjective knowledge — well within the statutory limitations period — that he had possible section 1983 claims based upon the November 1993 medical care. The district court properly refused to equitably toll the statute of limitations.

<u>Id.</u> at 916-17.

Similarly, in <u>Pamer v. Lucine</u>, 310 F. App'x 155, 156 (9th Cir. 2009), the Ninth Circuit upheld a grant of summary judgment on statute of limitations ground, finding that the California inmate asserting § 1983 claims was not entitled to equitable tolling in addition to statutory tolling. The district court did not abuse its discretion in ruling that "equitable tolling was unwarranted because Pamer was able to engage in various [litigation] activities during the time he contended he was physically and mentally unable to file suit." <u>Id.</u> at 156; <u>see</u> <u>also</u> <u>Hubbs v. Cty. of San Bernardino</u>, No. 8-989, 2011 WL 13143499, at *8 (C.D. Cal. May 17, 2011), report and recommendation adopted as modified, 2011 WL 13143500 (C.D. Cal. Sept. 28, 2011), aff'd, 519 F. App'x 468 (9th Cir. 2013) (denying equitable tolling to civil detainee because of his "demonstrated ability to litigate multiple" other matters during the limitations period, and collecting similar cases).

**2.     Analysis.**

The Group One claims accrued on or before July 8, 2010, i.e., the day when

Plaintiff was transported back to Arizona. Thus, the two-year limitations period expired on July 8, 2012, absent some form of tolling. Plaintiff needs approximately 1 year and 11 months of tolling to render his Group One claims timely.

### a. Statutory Prisoner Tolling.

It is undisputed that while in California and during the return trip to California, Plaintiff's custody was pursuant to the Transport Order issued under California Penal Code section 1334.3. (Dkt. 1-3 at 1, Ross Decl: "I was subpoena[d] as a material witness ….") Section 1334.3 is part of the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases. Cal. Pen. Code § 1334 et seq. The Act is based on an interstate compact to which all the states are signatories. People v. Cavanaugh, 69 Cal. 2d 262, 265-69 (1968). The Act utilizes the subpoena power of the courts in the state where a material witness is located by permitting presentation of a section 1334.3 certificate to a judge in that state, seeking the witness's attendance. (Id.) When presented with such a certificate, in lieu of issuing a subpoena, the judge may "order that the witness be forthwith taken into custody and delivered to an officer of the requesting state." Cal. Pen. Code § 1334.2; Ariz. Rev. Stat. § 13-4092. Such an order "shall be sufficient authority to the officer to take the witness into custody …." Cal. Pen. Code § 1334.3; Ariz. Rev. Stat. § 13-4093. Material witnesses held in such custody are, by definition, being detained pursuant to subpoena power, not due to a criminal charge or a criminal sentence. See Vannier v. Superior Court, 32 Cal. 3d 163, 172 (1982) (noting that plaintiffs subject to section 1334.3 "are not criminal defendants" but are rather "sought only as witnesses").

Plaintiff is only entitled to statutory tolling due to the disability of imprisonment if his circumstances match those stated in California Code of Civil Procedure section 352.1. See Jones, 393 F.3d at 927 (holding that courts must look to the "literal language" of § 1334.3 to determine whether to apply statutory tolling for the disability of imprisonment). Under that section, tolling is only available to

inmates who were imprisoned on a criminal charge or serving a criminal sentence *at the time when their cause of action accrued*. Cal. Code Civ. Proc. § 352.1(a). When the Group One claims accrued, the undisputed facts show that Plaintiff was neither – he was being detained by California authorities as a material witness.

Plaintiff points to the previously-assigned Magistrate Judge's February 2015 order denying Defendant Steinwand's motion to dismiss, wherein the Court held that Plaintiff's claims did not appear to be time-barred (citing § 352.1). (See Dkt. 282 at 9; Dkt. 38.) This argument fails. The Magistrate Judge specifically denied the motion to dismiss "without prejudice to Defendant's ability to raise similar arguments on a motion for summary judgment." (Dkt. 38 at 4.)

Plaintiff argues that "in none of the A.R.S. statutes or California penal code [does it] suggest, offer, or imply that any said witness would be under any specific custody classification." (Dkt. 277 at 6.) The Court disagrees, as explained above. See Vannier, 32 Cal. 3d at 172.

Plaintiff also argues that he was "imprisoned on a criminal charge or serving a criminal sentence" at the time his claims accrued because the Transport Order did not say otherwise (Dkt. 282 at 2) and because he was, in fact, incarcerated (id. at 6; Dkt. 277 at 7). The Transport Order describes Plaintiff as "the witness," not "the defendant" or "the prisoner," and it notes that the laws of the "State of California . . . give him protection from arrest, or the service of process, either civil or criminal, in connection with matters which arose before his entrance into said state pursuant to this requested order for attendance." (Dkt. 261-31 at 3.) The order aligns with the statute in treating Plaintiff as a material witness detained to ensure his appearance, not as a person "imprisoned on a criminal charge" or "in execution under" a criminal sentence. For purposes of statutory tolling, and as opposed to equitable tolling (see Jones, 393 F.3d at 929), Plaintiff's condition of confinement—i.e., whether he was housed with the general population—is irrelevant. The statute does not carve out an additional category of detainees who

should be treated as "imprisoned on a criminal charge" or "in execution under" a criminal sentence if incarcerated in a certain manner. Plaintiff therefore does not meet the requirements for statutory tolling established by the California Legislature.

**b.  Equitable Tolling.**

**i.  Defendants' lack of timely notice of Plaintiff's claims and resulting prejudice.**

Defendant Godfrey knew that Plaintiff's government claim had been denied in November 2010, and he was unaware of any further legal action by Plaintiff until he was served with the FAC in June 2016. (Dkt. 261-3 at 4.) Similarly, Defendant Steinwand knew about the claim in 2010 but did not learn about the instant lawsuit until 2015. (Dkt. 261-5 at 3.) Defendant Porras was unaware of Plaintiff's civil rights claims against him until he learned about this lawsuit in the summer of 2014. (Dkt. 261-4 at 5.)

Each of the Defendants declares that, had he known in 2010 or 2011 that Plaintiff intended to pursue the claims in the instant lawsuit, he would have taken measures to preserve relevant records and write down his own recollections and those of witnesses. (Dkt. 261-3 at 4; Dkt. 261-4 at 5; Dkt. 261-5 at 3.) Now, many years later, Defendants do not remember who witnessed their various interactions with Plaintiff. (Id.) They do not remember all their conversations with Plaintiff. (Id.) Thus, even though Defendants Godfrey and Steinwand arguably had notice of Plaintiff's claims as of 2010, all of the Defendants were prejudiced by Plaintiff's delay. See Addison, 21 Cal. 3d at 317 ("It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available."). Furthermore, Plaintiff cannot demonstrate a good faith basis for his filing delay, as discussed below.

**ii.  Plaintiff did not act reasonably and in good faith.**

Plaintiffs who engage in "unwarranted delay" are not entitled to equitable

18

tolling.  Ervin v. Los Angeles Cnty., 848 F.2d 1018, 1020 (9th Cir. 1988).  In Ervin, the Ninth Circuit determined that the plaintiff's delay was "unwarranted" where she knew the facts giving rise to her claim before the limitations period expired yet failed to give a reasonable excuse for having missed the filing deadline.  See also Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988) (finding plaintiff who filed lawsuit in state court, voluntarily dismissed it, then filed identical claim in federal court was not entitled to equitable tolling).

Here, Plaintiff disputes that his claims are untimely (see Dkt. 280 at 4) but gives no reason for his untimely filing, although it is undisputed that Plaintiff spent some weeks during the limitations period in disciplinary housing.  (Dkt. 261-19 at 3-4 [records showing 13 charged infractions in 2012 with different outcomes], 5 [records showing Plaintiff worked as a barber and kitchen helper through most of 2012].)  Even if Plaintiff received equitable tolling for the days he spent in disciplinary housing, there is no evidence that this would provide the more than 700 days of tolling needed to render Plaintiff's Group One claims timely.

During the remainder of the limitations period, Plaintiff was not subject to "conditions of confinement that would make the filing of a lawsuit practically impossible even for a trained attorney."  Jones, 393 F.3d at 929.  While in prison in Arizona during the limitations period (i.e., 2010-2012), Plaintiff drafted and/or filed documents related to numerous legal matters, including:

(1) grievances over housing (Dkt. 261-13 and -14);

(2) a disciplinary appeal in September 2012 (Dkt. 261-19 at 4);

(3) a lengthy government claim (Dkt. 261-11); and

(4) multiple motions in his criminal trial (Dkt. 261-6 [RJN listing as Exhibits 14-24 eleven handwritten motions Plaintiff filed between August 2010 and October 2013]).

Plaintiff argues that he was "fighting for his life after being advised [he] could be facing 100 plus years in prison." (Dkt. 282 at 8.)  Even if this were relevant to

equitable tolling, Plaintiff plainly had the time, resources, and opportunity to pursue other legal matters.  See Fink, 192 F.3d at 913-17.

Also, unlike Jones, Plaintiff was not isolated while in custody from potential means of obtaining legal advice or redress.  To the contrary, when his California-based Group One claims accrued, he had access to the Blackwells' trial judge and defense attorneys and even complained to them about his situation.  (See FAC at 10; Dkt. 199 at 12-13.)  During his own criminal trial a few months later, he had access to court-appointed defense counsel (although he chose to represent himself), then standby counsel, then appointed appellate counsel.  See Ross, 2013 WL 49725, at *1; (Dkt. 198-4 at 24).

Plaintiff has not adequately explained why he waited for his claims in this lawsuit to go stale prior to filing.  On the undisputed facts, there is no injustice in enforcing the two-year limitations period against Plaintiff.  Plaintiff is not entitled to equitable tolling.

**B.      GROUP TWO: Section 1983 Claims Based on Events in Arizona.**

Regarding Plaintiff's claims that Defendants caused him to be wrongfully placed in disciplinary housing upon his return to Arizona, Plaintiff was out of solitary confinement on or before July 26, 2010.  (SUF 20.)  Regarding Plaintiff's claims that Defendants caused his sentence to be wrongfully enhanced, Plaintiff was aware of his sentence, and the reasons given by the trial court for imposing it, by November 8, 2010.  (SUF 44.)

Thus, Plaintiff's Group Two claims accrued when Plaintiff was in penal custody in Arizona.  He has continuously remained in penal custody since that time. (Dkt. 261-19.)  He is therefore entitled to two years of statutory tolling under California Code of Civil Procedure section 352.1(a) for these claims.  Because he is suing for money damages, subsection (c) does not apply.

Adding four years to these accrual dates (i.e., two years for the limitations period and two more for statutory tolling), Plaintiff's filing deadlines were July 26,

2014 and November 8, 2014, respectively.  Plaintiff's June 2014 Complaint was constructively filed before these deadlines expired.

**C.      GROUP THREE: State Law Claims.**

The California Government Claims Act requires a person asserting a claim for "money or damages" against a local public entity (such as a county) or its employee to present a written claim to the "governing body of the local public entity" before filing an action for damages against that entity or employee.  Cal. Gov. Code §§ 900.2(a), 900.4, 905, 910-913.2.  Presentation of a written claim, and action on or rejection of the claim by the governing body, are conditions precedent to filing a suit.  Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 208-09 (2007).

The California Government Claims Act has strict time limits for both presenting a claim to the governing body and filing a court action after the governing body rejects the claim.  First, a person must present his claim to the governing body within six months of the accrual of the claim.  Cal. Gov. Code § 911.2.  Thereafter, any suit based on the claim presented to the governing body must be commenced within six months from the date the governing body's written notice of rejection is deposited in the mail.  Cal. Gov. Code § 945.6(a)(1); Clark v. Upton, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010).  The statutes of limitations that are applicable to claims against private defendants under California law do not apply to claims that require government presentation.  Cnty. of Los Angeles v. Sup. Ct., 127 Cal. App. 4th 1263, 1267 (2005).

Plaintiff never presented a written claim to any government entity seeking damages from Defendant Porras, and it is now too late to do so.  This is fatal to Plaintiff's claim against Porras seeking reimbursement for an airline ticket Plaintiff purchased in 2009, regardless of whether that claim sounds in tort or contract.  See Lozada v. City & Cty. of San Francisco, 145 Cal. App. 4th 1139, 1152 (2006) ("[A] suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in tort, contract or some

other theory.")

Plaintiff did present damages claims against Defendants Steinwand and Godfrey in a timely fashion to the Los Angeles County Board of Supervisors. (SUF 32; Dkt. 261-11 at 2.) The Court does not interpret the FAC as asserting any state law claims against Defendants Steinwand or Godfrey, but to the extent it does, Plaintiff's state law claims against them would be time-barred. Such claims do not qualify for statutory tolling. Cal. Code Civ. Proc. § 352.1(b); McGinnis v. Ramos, No. 15-2812, 2017 WL 474054, at *5-6 (S.D. Cal. Jan. 3, 2017), report and recommendation adopted, 2017 WL 469025 (S.D. Cal. Feb. 3, 2017). Plaintiff is also not entitled to equitable tolling. The County's November 2010 rejection letter told him that he needed to file a lawsuit within six months; he failed to do so and has failed to provide any evidence that it would be unjust to enforce that deadline against him. Martinez v. Tilton, No. 10-1501, 2013 WL 5670869, at *3 (E.D. Cal. Oct. 16, 2013) ("[T]he doctrine of equitable tolling provides no relief to Plaintiff from his failure to comply with the requirements of the Government Claims Act, despite having been placed on notice of the next requisite step."). As discussed above, there is no evidence that Plaintiff took any action between 2010 and filing the instant action in 2014 to pursue his claims against Godfrey or Steinwand, despite drafting numerous other court filings.

## VI.

## MERITS-BASED ANALYSIS OF GROUP TWO CLAIMS

### A.     Wrongful Sentencing Claim.

Plaintiff contends that Defendant Porras contacted Arizona prosecutor Neha Bhatia and told her that Plaintiff had assaulted an officer in California. Plaintiff believes "this information was provided to the sentencing judge in [his] case to enhance [his] sentence." (FAC at 11; Dkt 199 at 16-17 ["Porras contacted the prosecutor on my case … and informed her that I had assaulted an officer while in California, knowing it was untrue in an effort to increase my sentence …."].) For

1 support, Plaintiff points to the transcript of his sentencing hearing, at which

2 Prosecutor Bhatia said, "I was contacted by a prosecutor on a case there and … I

3 was advised that this defendant victimized a deputy when he was in California, so

4 it's obvious that his actions and criminal activity haven't stopped …." (Dkt. 199-4

5 at 25.) Defendant Porras declares, "I did not tell anyone that Mr. Ross had

6 assaulted anyone, and I had no such knowledge at the time." (Dkt. 261-4 at 4.)

7 The LACSD incident report accusing Plaintiff of "threatening" Defendant

8 Godfrey (Dkt. 221) and the sentencing hearing transcript (Dkt. 199-4 at 25) are

9 sufficient evidence upon which a reasonable jury could find that some California

10 prosecutor contacted Prosecutor Bhatia and told her that Plaintiff had threatened or

11 "victimized" a correctional officer while in California. Nonetheless, Plaintiff's

12 claim fails as a matter of law. Even accepting that one of the Defendants contacted

13 Prosecutor Bhatia and gave her false information (i.e., told her that Plaintiff had

14 threatened Defendant Godfrey when he never did) which she used to argue that

15 Plaintiff should receive the maximum sentence, and further assuming that the judge

16 gave Plaintiff the maximum sentence in part due to the false information, such

17 allegations do not state a cognizable claim under 42 U.S.C. § 1983. In Heck v.

18 Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held that a

19 prisoner may not bring a 42 U.S.C. § 1983 suit based on allegations that he was

20 wrongly sentenced unless the sentence has been set aside or otherwise invalidated,

21 as follows:

22 We hold that in order to recover damages for allegedly unconstitutional

23 conviction, imprisonment or *for other harm caused by actors whose*

24 *unlawfulness would render a* conviction or *sentence invalid*, a § 1983

25 plaintiff must prove that the conviction or sentence has been reversed

26 on direct appeal, expunged by executive order, declared invalid by state

27 tribunal authorized to make such determination or called into question

28 by a federal court's issuance of a writ of habeas corpus. [Citation.] A

claim for damages bearing that relationship to a conviction or **_sentence_**
that has not been so invalidated **_is not cognizable under § 1983_**.
Id. at 484-485 (emphasis added).

Federal courts have consistently applied the Heck doctrine to bar § 1983
claims based on allegations that a defendant supplied false information that
rendered the plaintiff's conviction or sentence wrongful.  See, e.g., Butterfield v.
Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (holding that Heck barred § 1983
claims alleging false information in prison file led to parole denial); Richardson v.
Thibodeau, 57 F. App'x 340, at *1 (9th Cir. 2003) (holding that Heck barred § 1983
claims alleging "defendants conspired to present false evidence so that the
suspended sentence …would be revoked"); Nails v. Haid, No. 12-439, 2015 WL
1932081, at *1 (C.D. Cal. Apr. 26, 2015) (holding that Heck barred § 1983 claims
alleging defendants authored "false reports" leading to plaintiff's arrest and
conviction); Richardson v. Oakland Police Dep't, No. 2-3280, 2002 WL 1677717,
at *1 (N.D. Cal. July 23, 2002) (holding that Heck barred § 1983 claims alleging
"officers filed false weapons charge resulting in [plaintiff's] receiving a one year
sentence").

At the sentencing hearing, Plaintiff's advisory counsel objected to Prosecutor
Bhatia telling the sentencing judge about Plaintiff's behavior in California, but the
judge overruled his objection.  (Dkt. 199-4 at 25.)  If this was prejudicial error, then
Plaintiff had an opportunity to challenge that ruling and his sentence via direct
appeal or habeas proceedings.  In those proceedings, a record could have been
developed concerning how the trial court exercised its sentencing discretion.
Having failed to bring such a challenge, Plaintiff cannot now bring civil rights
claims against persons who purportedly influenced his sentence by supplying false
information.

**B.** **Wrongful Disciplinary Housing Claim.**

Per Plaintiff's declaration:

> Once arriving at the 4th Ave. Jail in Arizona, a Maricopa County
> Sheriff's Deputy had to uncuff me and then we were escorted to the 4th
> floor which is for max and high profile inmates. I overheard Defendant
> Brian Steinwand tell a sergeant who was unknown to me expressing his
> dissatisfaction with my testimony and that I done something in
> California and that they would send them the paperwork.

(Dkt. 199 at 15.) This is not a procedural due process or retaliation claim against
Defendant Steinwand.[14] Rather, Plaintiff claims that Steinwand caused him to be
wrongfully placed in disciplinary housing by falsely telling an Arizona deputy that
Plaintiff had "done something" in California.

Plaintiff's "false accusation" claim fails for at least two reasons. First, there
is no evidence that Defendant Steinwand knowingly told the Arizona authorities
anything false. Even accepting that Defendant Steinwand said that Plaintiff had
"done something" in California and that he could send supporting paperwork, that
statement is consistent with the July 3 incident report accusing Plaintiff of
threatening Defendant Godfrey. While Plaintiff contends that Godfrey and the
others at MCJ knew that accusation was false, there is no evidence that Steinwand
was present or had any reason to think that the July 3 incident report was false.

Second, and more fundamentally, allegations that a correctional officer has
made false accusations against a prisoner which triggered prison discipline (e.g.,
more restrictive housing, loss of privileges[15]) but did not lengthen the prisoner's

---

[14] The Arizona authorities – not Defendants – decided to house Plaintiff on
the fourth floor and what process to follow in making that decision.

[15] Placement in administrative segregation generally does not implicate a
protected liberty interest because the conditions of administrative segregation are
within the expected parameters of the sentence imposed. See Sandin v. Conner,
515 U.S. 472, 485 (1995) (concluding that "though concededly punitive," placement
in disciplinary segregation for thirty days "does not present a dramatic
departure from the basic conditions of Conner's indeterminate sentence"); Austin v.

25

detention do not state a constitutional claim.  See Garrott v. Glebe, 600 Fed App'x 540, 541 (9th Cir. 2015) (dismissing § 1983 claim over prisoner's discipline because of purported false testimony against him under color of law)[16]; Randle v. Melendrez, No. 16-2342, 2017 WL 1197864, at *3 (C.D. Cal. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1199719 (C.D. Cal. Mar. 30, 2017) (holding inmate's allegation that guard falsely accused him of making threatening his cellmate does not state a § 1983 claim); Stevenson v. Holland, No. 16-1831, 2017 WL 2958731, at *10 (E.D. Cal. July 11, 2017) ("[T]here is no independent right to be free from false (or incomplete) reporting where duration of sentence is not impacted"); Smith v. Albee, No. 15-1598, 2016 WL 6094471, at *4 (E.D. Cal. Oct. 18, 2016) (The "falsification of disciplinary reports does not state a stand-alone constitutional claim," because "[t] here is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct" which may result in prison discipline.); Dickson v. Valenzuela, No. 14-6954, 2016 WL 7187628, at *3 (C.D. Cal. Nov. 4, 2016), report and recommendation adopted, 2016 WL 7187293 (C.D. Cal. Dec. 9, 2016) (dismissing § 1983 claim alleging defendants "wrongfully

---

Terhune, 367 F.3d 1167, 1170 (9th Cir. 2004) ("Sandin held that subjecting a prisoner to punitive administrative segregation did not implicate the due process clause because such segregation was 'within the expected perimeters of the sentence imposed.'").

[16] Other circuits agree.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."); Hanrahan v. Lane, 747 F.2d 1137, 1139-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections ... are provided.").  In contrast, a false rules violation that results in longer detention does tread on a prisoner's protected liberty interest, which can give rise to a substantive due process claim.  See Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017); Costanich v. Dep't. of Soc. & Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010).

decided to place and retain" plaintiff in disciplinary housing despite "plenty of evidence" that plaintiff "did not participate in the riot"); <u>Everett v. Brazelton</u>, No. 12-680, 2016 WL 7324701, at *3 (E.D. Cal. Dec. 15, 2016) (allegations that "Officer Black … planted evidence so that Plaintiff would be found guilty of false charges" failed to state "any cognizable claim under § 1983"); <u>Chavira v. Rankin</u>, No. 11-5730, 2012 WL 5914913, at *1-2 (N.D. Cal. Nov. 26, 2012) (holding allegations that prisoner was innocent of disciplinary charges and incorrectly held in administrative segregation does not raise a due process issue).

Here, Plaintiff alleges that Defendants told Arizona authorities false information that resulted in prison discipline, i.e., approximately two weeks in more restrictive housing. Per the above-cited authorities, these allegations do not state a constitutional claim.

## VII.

## RECOMMENDATION

For all these reasons, the Court recommends (1) adopting this Report and Recommendation; (2) granting Defendant's motion for summary judgment; and (3) dismissing the FAC with prejudice.

Dated: <u>November 02, 2017</u>

_Karen E. Scott_
_____
KAREN E. SCOTT
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any Objections will be reviewed by the District Judge whose initials appear in the

27

case docket number.